UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BENNIE GRAY, JR.,
   *Plaintiff*,
   *v.*
COMMISSIONER OF CORRECTION,
   *Defendant*.

Civil No. 3:10cv1998 (JBA)

March 30, 2014

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pro se Plaintiff Bennie Gray, currently incarcerated at Enfield Correctional Institution, commenced this action under 42 U.S.C. § 1983 against the Commissioner of the Department of Correction in his official capacity, alleging that Defendant's failure to provide him with any form of legal assistance for filing federal habeas petitions while he was incarcerated resulted in his losing the opportunity for federal habeas review of his state conviction, because he had no way of learning of the amended one-one limitations period under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and his petition under 28 U.S.C. § 2254 was denied as time barred.

Plaintiff seeks (1) the "[r]ight to file a late Federal Petition for writ of habeas corpus;" (2) a declaratory judgment that the State's denial of legal assistance to inmates to file federal habeas petitions is unconstitutional; and (3) a declaratory judgment that the State must provide pro se inmates with adequate research facilities to be able to file a federal habeas petition. (Compl. [Doc. # 1] at 9.)

Defendant now moves [Doc. # 17] for summary judgment. For the reasons that follow, Defendant's motion is denied.

I.      Facts

    A.      Background

Petitioner is currently serving a twenty-year sentence for first-degree manslaughter to which he was sentenced on November 17, 1998. *See Gray v. Comm'r of Correction*, CV020814300S, 2004 WL 1889043, at *2–3 (Conn. Super. Ct. Jul. 23, 2004). Plaintiff did not appeal his conviction, but has three petitions for habeas corpus review in state court, asserting that the *nolo contendere* plea that he entered in 1998 was based on ineffective assistance of counsel. The first petition was dismissed on the merits after a hearing, *see Gray v. Warden*, No. CV 990432041, 2000 WL 1207299, at *1 (Conn. Super. Ct. Aug. 1, 2000), and the second petition was dismissed on the basis of claim preclusion, *see Gray v. Comm'r of Correction*, No. CV00443020, 2001 WL 1132408 (Conn. Super. Ct. Aug. 24, 2001). Mr. Gray proceeded pro se on these first two petitions, but on January 25, 2002, he filed a third habeas petition represented by counsel. On July 23, 2004, after a twenty-nine day trial, Superior Court Judge Rittenband denied the amended petition.[1] *See Gray*, 2004 WL 1889043, at *17. On February 6, 2007, the Connecticut Appellate Court affirmed the decision of the trial court, *see* 99 Conn. App. 444 (2007), and on June 6, 2007, the Connecticut Supreme Court denied certification to appeal, *see* 282 Conn. 925 (2007).

---

[1] The court noted that it was "troubled by [its] decision because it believes that there is more evidence pointing to Fluker [Gray's cousin] as the shooter than to Gray. However, under the standards for habeas corpus, the Court has no choice but to reject the petition," because a "Habeas Court finding reasonable doubt" of guilt is not grounds for granting a petition. *Gray*, 2004 WL 1889043, at *17, *1. The court "suggest[ed] to the Petitioner that he could attempt to seek sentence review and/or persuade the State's Attorney . . . to agree to a modification of sentence." *Id.* at *17.

On July 20, 2007, Plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court challenging his 1998 manslaughter conviction on the grounds that his plea was involuntary, he was afforded ineffective assistance of counsel, and the state habeas court violated his right to due process. *See Gray v. Comm'r of Correction*, Case No. 3:07cv1097 (PCD) (D. Conn). On December 21, 2007, the late Honorable Peter C. Dorsey dismissed the petition as barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d). (*See id.*, Ruling Granting Mot. to Dismiss [Doc. # 19].) As set forth in the court's ruling, the limitations period started to run upon the completion of Mr. Gray's direct appeal or the time within which an appeal could have been filed and was tolled during any periods in which a properly filed state habeas petition was pending. *Id.* at 2–3 (citing 28 U.S.C. § 2244).

Mr. Gray's conviction became final on December 7, 1998, after the time expired for filing a direct appeal. Mr. Gray's first state habeas petition was not filed until 324 days later on October 28, 1999. The limitations period was tolled throughout the pendency of that petition and started to run again on November 7, 2001 when the time for appeal to the Connecticut Appellate Court expired. *Id.* at 3. At this point, there were only 41 days remaining in the limitations period, which expired on December 18, 2001, but Mr. Gray's third state habeas petition was not filed until January 25, 2002. *Id.*

Mr. Gray filed a second federal habeas petition in January 2008. *See Gray v. Comm'r of Correction*, No. 3:08cv165 (PCD) (D. Conn). The case was originally assigned to Judge Underhill, who construed the petition as a motion to reopen the prior federal petition on the grounds of equitable tolling and transferred the case to Judge Dorsey. (*See id.*, Ruling Transferring Case to Judge Dorsey [Doc. # 5].) On June 30, 2008, Judge

3

Dorsey denied the motion to reopen on the basis of equitable tolling. *See Gray*, No. 3:07cv1097 (PCD) (Ruling on Mot. Reopen [Doc. # 25] at 6.). The court rejected Mr. Gray's claim "that he was denied legal assistance" and "was unaware, when [he] filed this action, of the limitations period for filing a federal habeas petition," because he did "not show that he could not obtain information regarding the procedures for filing a federal habeas action from the Office of the Public Defender." *Id.*

On July 21, 2008, Judge Dorsey denied Mr. Gray's motion for reconsideration and transferred the case to the Second Circuit to determine whether the case should be remanded to proceed in the district court as a second or successive habeas petition. *See Gray,* No. 3:08cv165, Ruling Denying Mot. Reconsideration [Doc. # 9] at 2 (citing 28 U.S.C. § 2244(b)(3)(A)). The Second Circuit issued a mandate denying authorization to file a second or successive habeas petition because Mr. Gray did not file a timely application with the Second Circuit.[2] (*See Gray,* No. 3:08cv165, Mandate [Doc. # 10].)

---

[2] On February 11, 2013, the Second Circuit issued a mandate dismissing two applications that Mr. Gray had filed seeking an order authorizing the district court to consider successive petitions. The Second Circuit denied the requests under 28 U.S.C. § 2244(b), because Mr. Gray did not rely on newly discovered evidence or a newly announced constitutional rule made retroactive on collateral review. *See Gray*, No. 07cv1097 (PCD) [Doc. # 27].) On January 9, 2014, the Second Circuit denied another request by Mr. Gray for permission to file a successive petition on the same grounds and also because Mr. Gray did not state "a valid actual innocence claim," noting that Judge Rittenband's "personal expressions of doubt as to Petitioner's guilt," was not sufficient to establish that "'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Id.* [Doc. # 28] at 1–2 (quoting *House v. Bell*, 547 U.S. 518, 536–37 (2006)).

B.      **Denial of Access to the Courts**

The basis for Mr. Gray's claim in this § 1983 action is that Defendant does not provide inmates with access to law libraries and "offers no source of alternative legal knowledge to inmates who wish to attack the constitutionality of their conviction and sentence" in federal court, and as a result, he was never aware of the one-year limitations period for filing a federal habeas petition, resulting in the loss of his opportunity to seek federal habeas review. (Compl. at 8.)

Under Connecticut law, the court before which a habeas petition is pending may designate counsel from the Office of Chief Public Defender to represent an indigent inmate.[3] Mr. Gray contends that the Public Defender refused to advise him regarding his contemplated § 2254 action, because he was not a client. (Gray Aff. [Doc. # 22] ¶ 2; Compl. at 8). Plaintiff was also unable to obtain assistance from the Inmates' Legal Assistance Program because it is prohibited from providing assistance to prisoners on criminal matters or habeas petitions (Gray Aff. ¶ 3.) Plaintiff was further stymied because the State does not provide law libraries in its prisons and or make available books containing statutes, case law or rules of procedure, and is alleged to have a policy against inmates assisting other inmates with legal matters. (*See* Gray Aff. ¶¶ 3, 6–7, 9.) Defendant does not submit any evidence to dispute Plaintiff's factual assertions.

---

[3] Conn. Gen. Stat. § 51-296(a) provides:

> In any criminal action, in any habeas corpus proceeding arising from a criminal matter . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender . . . to represent such indigent defendant.

5

## II.     Discussion[4]

Defendant moves for summary judgment on the grounds: that: (1) Defendant Commissioner lacks personal involvement in the alleged denial of access to courts; (2) Plaintiff has failed to state a claim of denial of access to courts because he has not alleged that he suffered an actual injury; (3) there is no constitutional right to a law library; (4) there is no practical relief that Defendant can afford Plaintiff; (5) the action is barred by *res judicata* and/or collateral estoppel; (6) the action is barred by the *Rooker-Feldman* doctrine; and (7) there is no federal right to counsel in a habeas petition.[5]

---

[4] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[5] Defendant's arguments based on the *Rooker-Feldman* doctrine and the right to counsel in a federal habeas petition are inapplicable to Plaintiff's claim of unconstitutional denial of the capability to bring a federal habeas petition pro se.

### A. Denial of Access to Courts

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Bounds*, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. Providing "adequate law libraries [is just] one constitutionally acceptable method to assure meaningful access to the courts," but *Bounds* did not "not foreclose alternative means to achieve that goal," such as providing professional legal assistance or the assistance of trained inmates. *Id.* at 830–31.

"[A]n inmate alleging a violation of *Bounds* must show actual injury," which "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance," and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Additionally, *Bounds* "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. A violation of this right is established only when an inmate "shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided." *Id.*

7

Defendant contends that he is entitled to judgment as a matter of law, because Mr. Gray "has not alleged and cannot allege that he was injured by the defendant's alleged actions, as opposed to his own conduct, act or omission" and simply "speculates that if there were an available federal statute book that contained the plain statutory language of the AEDPA [the Antiterrorism and Effective Death Penalty Act], and 28 U.S.C. § 2244 (d)(1) [describing the one-year statute of limitations] he would have successfully prevailed in his federal habeas corpus petition." (Def.'s Mem. Supp. [Doc. # 17-1] at 26.)

Contrary to Defendant's assertion, however, Mr. Gray does not "speculate" that he would have "prevailed on his petition," but rather has submitted unrebutted competent evidence that if taken as true—as it must be on summary judgment—shows that he was denied access to any source of legal information needed to file a timely habeas petition. *See* Fed. R. Civ. P. 56(c)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including . . . affidavits . . . ."). Plaintiff avers that the State provided no resources for him to learn of the one-year statute of limitations under AEDPA, and thus he was denied access to the courts because his federal habeas petition was dismissed as filed after the one-year limitations period. Specifically, Plaintiff states: (1) the State Public Defender would not provide him legal advice on a federal habeas petition and (2) the Inmates' Legal Assistance program would not provide him advice on criminal matters, including post-conviction review. (Pl.'s Aff. ¶¶ 2–3.)

Defendant offers no evidence of any method of assuring that state inmates have meaningful access to courts other than Conn. Gen. Stat. § 51-296(a), contending that because Mr. Gray had access to state-provided attorneys from the State Public Defender

8

for post-conviction review in state court, Mr. Gray "at any time easily could have and should have asked about the procedures and deadline for filing a 28 U.S.C. § 2254 habeas petition in the federal court."[6] (Def.'s Mem. Supp. at 13.)

It is undisputed that the provision of appointed counsel is an acceptable, and often highly effective, means of ensuring compliance with the constitutional requirement of providing inmates with access to the courts. *See Bounds*, 430 U.S. at 830–31 ("[W]hile adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal. . . . Among the alternatives are the training of inmates . . ., and the use of full-time staff attorneys, working . . . as part of public defender or legal services offices.").

---

[6] Mr. Gray was represented by private counsel on the original manslaughter charges, proceeded pro se on his first two state habeas petitions, and was represented by private counsel on the third state habeas petition. *See Gray*, 2004 WL 1889043 at *1; Def.'s Mem. Supp. at 1 & n.1. The only example of Mr. Gray's contact with the Public Defender's Office cited by Defendant is in connection with a 1997 guilty plea to a narcotics charge. (Def's Mem. Supp. at 13 n.6.)

Case 3:10-cv-01998-JBA Document 23 Filed 03/31/14 Page 10 of 19

Although Conn. Gen. Stat. § 51-296(a) provides for the appointment of counsel "in any habeas corpus proceeding," Defendant cites no authority for the doubtful proposition that state public defenders would be authorized to represent state prisoners in federal habeas proceedings or that an attorney from the State Public Defender representing an inmate in a state habeas petition would properly advise one regarding a contemplated federal habeas petition.[7]

In *Morales v. Murphy*, No. 3:09cv1372 (MRK), 2010 WL 2667442, at *4 (D. Conn. June 30, 2010), the court cast doubt on this very argument in denying the State's motion to dismiss a federal habeas petition filed past the one-year limitations period where the inmate sought equitable tolling on the basis that the State had unconstitutionally deprived him of the capability of filing a timely petition. The State contended that it fulfilled its constitutional obligations by statutorily authorizing that public defenders represent indigent defendants in challenges to their convictions in state court. *Id.* The court viewed the State's argument with skepticism, noting that while Connecticut provided for

---

[7] An attorney cannot casually offer legal advice to a client regarding matters outside the scope of his representation without potentially running afoul of professional ethics rules and facing civil liability for malpractice. *See Dubreuil v. Witt*, 80 Conn. App. 410, 420 (2003) (defining legal malpractice "as the failure . . . to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (internal quotation marks omitted)). Such concerns would be especially evident in the complicated area of federal habeas law, which differs considerably with state post-conviction review. Of particular note here, there is no statute of limitations applicable to state habeas review in Connecticut, *see Calderon ex rel. Santos v. Choinski*, No. 3:04cv1475 (JCH), 2006 WL 2474954, at *3 (D. Conn. Aug. 25, 2006) ("Connecticut does not have a fixed statute of limitations for habeas petitions . . . ."), while the calculation of the expiration date for filing a federal habeas petition is often complicated.

10

appointed counsel in state habeas, "[i]t is another question altogether whether the State's provision of public defenders to assist inmates in filing *state* habeas actions—without providing any other avenue for meaningful court access—fully satisfies its constitutional obligations, for state public defenders have no obligation to assist inmates with filing *federal* habeas petitions."[8]

Additionally, the language of the statute puts Defendant's proposition in serious doubt as applicable to this case, because it provides that "the court *before which the matter is pending* shall . . . designate a public defender . . . to represent such indigent defendant." Conn. Gen. Stat. § 51-296(a) (emphasis added). Thus, before counsel can be appointed there must already be a habeas petition pending. *See State v. Sostre*, 48 Conn. Supp. 104, 119 (Super. Ct. 2002) ("[Section] 51–296 . . . requires that . . . before the court can appoint a public defender to represent a defendant . . . a 'criminal action' must be 'pending' before a court. . . ."). Given Mr. Gray's claim implicates his constitutional right of access to the courts, meaning the "opportunity to *file* nonfrivolous legal claims challenging . . . convictions," *Lewis*, 518 U.S. at 356 (emphasis added), the potential for access to counsel at a later stage of the process would not be sufficient. *See Bounds*, 430 U.S. at 828 n.17 (noting that it was "irrelevant" that the state provided counsel in "some state post-conviction proceedings for prisoners," because the constitutional right of access to the court concerned "'protecting the ability of an inmate to prepare a petition or complaint'" (quoting *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974))).

---

[8] After this ruling, the State waived its statute of limitations defense without conceding that equitable tolling applied. *See Morales*, 2011 WL 2580672, at *2 (D. Conn. June 29, 2011).

Defendant also suggests that "plaintiff easily could have written to the clerk of the United States District Court and requested forms for a self-represented litigant." (Def.'s Mem. Supp. at 13–14.) The form that Defendant contends would have adequately provided Mr. Gray with information for timely access to the federal courts advises inmates:

> The law governing petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 has changed dramatically. You should consult these statutory changes in 28 U.S.C. §§ 2244, 2253, and 2254, as amended by, Title I of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 101-106, 110 Stat. 1214 (Apr. 24, 1996).

(Information and Instructions for Filing a Petition for a Writ Of Habeas Corpus, Ex. 5 to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 17-2] ¶ 7.) This form does not reference the filing deadline in any way, so even if Mr. Gray received this form, by his unrebutted evidence he had no means of knowing these changes impacted his filing deadline because Defendant provided him with no access to updated federal statutes or legal materials, such as AEDPA.

The form also makes clear that court personnel cannot provide an inmate with legal advice (*id.* ¶ 12), and thus, even a call to the Clerk's Office would not have provided Mr. Gray with the critical guidance on the amended AEDPA statute of limitations that he lacked. Even if Plaintiff were aware that a one-year statute of limitations period applied to federal habeas petitions, as Judge Dorsey's opinion makes clear, applying this limitations period involves complicated application of state procedural rules to determine the start of the limitations period and the periods during which it is tolled.

Finally, Defendant maintains that the fact that Plaintiff has been a party in thirteen court cases, including state post-conviction review petitions and appeals of such petitions, demonstrates that he has not been denied access to the courts. (Def.'s Mem. Supp. at 27–28.) Only one of the cited cases, however, was in federal court and was unrelated to AEDPA, *Gray v. Erfe*, No. 3:13cv39 JBA, 2012 WL 7785080, at*3 (D. Conn. Mar. 21, 2012), a § 1983 action seeking damages against prison officials for prison discipline that was dismissed for failure to first seek "invalidation of the disciplinary finding . . . in a habeas corpus action filed in state court."

Plaintiff's ability to access the state courts or to bring other types of claims in federal court is beside the point here, because Plaintiff asserts that Defendant's denial of assistance in any form in his preparation and filing of "meaningful legal papers," i.e. a timely § 2254 petition has denied him access to federal habeas review, and access to this habeas review in particular is a fundamental aspect of the right of access to the courts. *See Johnson v. Avery*, 393 U.S. 483, 485 (1969) ("The [Supreme] Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme. . . . Since the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."); *see also Lewis*, 518 U.S. at 355 ("The tools require[d] to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.").

Because Defendant has not rebutted Plaintiff's evidence showing that he had no way to learn of the amended AEDPA statute of limitations, Defendant's motion for summary judgment on this record is denied.

### B.     Personal Involvement

Defendant, who is sued only in his official capacity for injunctive and declaratory relief, contends that he lacked personal involvement in the alleged deprivation of Plaintiff's constitutional rights, because under Connecticut law he "has no authority to appoint counsel for a habeas petitioner," which only the court can do.  (Def.'s Mem. Supp. at 36.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted), however, "[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983," *New York Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 339 (E.D.N.Y. 2012) (quoting *Davidson v. Scully,* 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001)).

Rather, "[a]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." *Davidson*, 148 F. Supp. 2d at 254 (quoting *Marshall v. Switzer,* 900 F. Supp. 604, 615 (N.D.N.Y. 1995)); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996) ("The monetary claim against Superintendent Dalsheim was properly dismissed.  To the extent that the claim was brought against him in his official capacity, it was barred by sovereign immunity.  To the

14

extent that he was sued in his individual capacity, the claim fails for lack of an allegation of personal involvement. However, the complaint also sought injunctive relief against Dalsheim, and dismissal of that claim was not warranted." (internal citations omitted)).

The fact that Defendant does not have judicial authority to appoint counsel is immaterial, because appointing counsel is just one of the myriad means by which an inmate can be provided meaningful access to the courts. *See Lewis*, 518 U.S. at 356. Since Defendant is the official who administers the State Department of Correction, Plaintiff has adequately demonstrated personal involvement by his alleged failure ensure constitutionally access to the courts. *See Koehl v. Dalsheim*, 85 F.3d at 89 ("As the Superintendent of Downstate, Dalsheim had overall responsibility to ensure that prisoners' basic needs were met. . . .")).

Accordingly, Defendant's motion for summary judgment is denied on the basis of lack of personal involvement.

### C. Issue Preclusion

Defendant contends that issue preclusion bars Plaintiff from asserting this claim, because "Judge Dorsey, in denying the motion to reopen expressly rejected the claim that plaintiff was denied legal assistance." (Def.'s Mem. Supp. at 11.) "To assert successfully the doctrine of issue preclusion . . . a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." *Dowling v. Finley Associates, Inc.*, 248 Conn. 364, 374 (1999).

In addressing Plaintiff's request for equitable tolling, Judge Dorsey did not rule on the precise issue presented here—denial of the constitutional right of access to the court.

Rather, he held that that limitations on access to a law library "and unfamiliarity with federal law do not constitute extraordinary circumstances that would toll the [AEDPA] limitations period and warrant reopening this case." *Gray*, No. 3:07cv1097 (PCD) (Ruling on Mot. Reopen at 6.). The two cases cited in support of this proposition suggest that Judge Dorsey was not addressing the constitutional dimension addressed in this § 1983 action of how Defendant's denial of any form of legal assistance by which Plaintiff could learn of AEDPA's filing deadlines unconstitutionally deprived him access to federal court. *See id.* (citing *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) ("Petitioner's further assertions—that he has limited education, is ignorant of the law and legal procedure, lacked funds to hire another attorney, had limited access to legal assistance that was available to prisoners, and was allowed limited use of the prison law library—also are not extraordinary circumstances that warrant equitable tolling for the extended period of delay in this case."); *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) ("[R]estricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.")). As Plaintiff's constitutional claim has not previously been adjudicated, Plaintiff may properly pursue it here.

### D.     Mootness

Defendant's contention that this case is moot, because there is no relief that can be afforded to Plaintiff is a closer question. The mootness doctrine derives from the "case or controversy" requirement, and "at its uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). "A case is moot, and accordingly the federal courts have no

16

jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)).

As Defendant notes, as the Commissioner of Correction, he has "no ability nor the authority to grant" Mr. Gray permission to file a late federal habeas petition as he seeks in his Complaint. (Def.'s Mem. Supp. at 9.) Plaintiff's opposition clarifies that he is not directly seeking the right to file an untimely federal habeas petition in this action, but rather seeks a declaratory judgment that Defendant violated his constitutional right to access the courts under *Bounds*, which he would use as a basis for an argument before the Second Circuit and then the district court for "a successive petition or an application for permission to move forward on a successive petition."[9] (Pl.'s Aff. ¶ 20.)

Defendant has not rebutted this claim, and it is conceivable that declaratory relief could aid Plaintiff in future actions. *See Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 496 (2d Cir. 2009) ("[F]ederal courts have leeway to fashion appropriate relief, and appellate tribunals have accorded district courts broad discretion to frame equitable remedies for constitutional violations so long as the relief granted is commensurate with the

---

[9] Because Mr. Gray has already filed a federal habeas petition, any subsequent petition would be a second or successive petition. *See Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005) ("[D]ismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits that renders future petitions under § 2254 challenging the same conviction 'second or successive' petitions under § 2244(b)."). The district court cannot entertain a second or successive § 2254 petition unless the court of appeals has authorized the filing of that petition in the district court. See 28 U.S.C. § 2244(b)(3). Thus, Mr. Gray must again seek leave from the Second Circuit in order to file another habeas petition.

constitutional infraction." (quoting *Todaro v. Ward,* 565 F.2d 48, 54 n.7 (2d Cir. 1977) (alterations omitted)).

      Whether the result will be any different should Mr. Gray prevail in this action and obtain a declaratory judgment that he was deprived of his constitutional right to access federal court is for another day and perhaps another court. It is enough for now that Mr. Gray has demonstrated that his claim may not be moot, because he does not "lack a legally cognizable interest in the outcome" of this case. *Fox*, 42 F.3d at 140 (quoting *Davis,* 440 U.S. at 631). As Defendant has not demonstrated that the Court cannot fashion any effective relief, summary judgment is denied on this basis. *See Lerner v. D.C.*, 362 F. Supp. 2d 149, 162 n.10 (D.D.C. 2005) ("Since Defendants cite to no argument or authority contradicting this claim, they have failed to carry their burden of showing they are entitled to summary judgment as a matter of law because of mootness.").

**III.    Conclusion**

For the reasons discussed above, Defendant's Motion [Doc. # 17] for Summary Judgment is DENIED.  Because this case is now ready for a trial on the question of whether Mr. Gray was constitutionally denied access to court, for which Mr. Gray will need counsel, the case will be administratively closed to permit the appointment of pro bono counsel.  It will be restored to the active docket on motion of either party filed within thirty days of the appearance of counsel for Plaintiff, or on motion of a party showing necessary further action by the Court.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2014.